IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JEFFERY S. HAMILTON, and KALEIMAEOLE NOLA LINDSEY LATRONIC, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>FORECLOSURE EXPEDITORS/ INITIATORS, LLC, a Washington limited liability company, and NORTHWEST TRUSTEE SERVICES, INC., a Washington corporation, *et al*.,<br><br>        Defendants. | CIVIL NO. 13-00145 DKW-KJM<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

Defendants Northwest Trustee Services, Inc. ("NWTS") and Foreclosure Expeditors/Initiators, LLC ("FEI"), entities that assisted mortgagees in the non-judicial foreclosures of Plaintiffs' mortgages, seek dismissal of the claims against them for wrongful foreclosure, violations of Hawai'i Revised Statutes ("HRS") § 480-2, and intentional interference with prospective economic advantage. Defendants contend that, as agents of the foreclosing mortgagees, they owed no direct duties to Plaintiffs during the course of foreclosure proceedings to

ensure that Plaintiffs' properties sold at the best possible price, and that they are not liable under the relevant statutes or in tort.

First, because no private cause of action exists against a mortgagee's agent based on alleged violations of the non-judicial foreclosure statute, HRS Chapter 667, and Hawai'i courts have yet to recognize such a cause of action under the common law, Plaintiffs' wrongful foreclosure claim is dismissed. Second, Plaintiffs sufficiently allege that NWTS and FEI's conduct "occurred in the course of 'trade or commerce'" with Plaintiffs, as is necessary to sustain a claim for unfair or deceptive acts or practices ("UDAP") and unfair methods of competition ("UMOC") under Section 480-2. Finally, Plaintiffs' claim for intentional interference with prospective economic advantage fails to state a claim under the circumstances alleged and is therefore dismissed.

For these reasons, Defendants' Motion to Dismiss (Dkt. No. 68) is GRANTED as to Plaintiffs' wrongful foreclosure and intentional interference with prospective economic advantage causes of action. The Motion is DENIED, however, with respect to Plaintiffs' HRS § 480-2 claims.

## BACKGROUND

### I.  Plaintiffs' Allegations

In their First Amended Complaint ("FAC"), filed on April 24, 2013, Plaintiffs Hamilton and Latronic, individually and on behalf of others similarly situated,[1] allege that NWTS and FEI, plus several law firms and individual attorneys, violated state law during the course of non-judicial foreclosure proceedings.[2]  They allege that NWTS is a Washington corporation that assists mortgagees in foreclosing real property mortgages in the States of Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, and Washington.  FAC ¶ 6.  FEI is described in the FAC as a Washington limited liability company that publishes, posts, and serves

---

[1]This case is a putative class action, but, until Plaintiffs move for and obtain class certification, this Court will only consider the claims that Plaintiffs bring as individuals.  The FAC defines the putative class as—

> Each "consumer" within the meaning of H.R.S. Chapter 480 who owned real property in the State of Hawaii and who executed a mortgage on said property; whose mortgage was thereafter the subject of a non-judicial foreclosure proceeding pursuant to H.R.S. §§ 667-5 *et seq*.; who, because of said non-judicial foreclosure proceeding, was divested of record title to or was deprived of or surrendered possession of the property being foreclosed on or after May 31, 2008; and during which foreclosure proceeding the foreclosing mortgagee was represented, aided, or assisted, either directly or indirectly, by Defendants RCO, RCO HAWAII, NWTS, and/or FEI.

FAC ¶ 16.

[2]Plaintiffs subsequently dismissed with prejudice the individual attorney and law firm defendants, Stephen D. Routh (individually), Brett P. Ryan (individually), Derek W. C. Wong (individually), David E. Fennell (individually), Routh Crabtree Olsen, P.S. (a Washington professional service corporation), and RCO Hawaii, LLLC (a Hawaii limited liability law company), on October 17, 2017.  Dkt. No. 72.

foreclosure notices and conducts foreclosure auctions in non-judicial foreclosure proceedings involving NWTS, Routh Crabtree Olsen, P.S. ("RCO"), and RCO Hawaii, LLLC's clients in the State of Hawaii.   FAC ¶ 9.   FEI is not a law firm, and neither it nor its members or managers is licensed to practice law in the State of Hawaii.   FAC ¶ 9.   Plaintiffs do not bring any claims against the foreclosing mortgagees.

Hamilton and Latronic each executed mortgages to purchase real property in Hawaii, FAC ¶¶ 31, 147, and each mortgage included a power-of-sale clause that stated: "If Lender invokes the power of sale, Lender shall give Borrower notice of sale . . . Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale."   FAC ¶¶ 33, 147. Countrywide Home Loans, Inc., the mortgagee under the Hamilton Mortgage, recorded the "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" on or around October 14, 2008, and the non-judicial foreclosure sale of Hamilton's property took place on February 4, 2009.   FAC ¶¶ 36, 38, 62.   U.S. Bank, the assignee of the Latronic Mortgage, recorded its first "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" on April 8, 2010, which was cancelled and followed by a subsequent Notice of Sale, recorded on May 13, 2010.   FAC ¶ 152.   The non-judicial foreclosure sale of Latronic's property took place on June 16, 2010.   FAC ¶ 169.

Plaintiffs allege that their foreclosing mortgagees contracted with NWTS to assist in foreclosing on the Hamilton and Latronic mortgages, and NWTS, in turn, arranged for its "affiliated law firm, RCO, to represent the foreclosing mortgagees in connection with the non-judicial foreclosures of those mortgages." FAC ¶¶ 36, 151.[3] According to Plaintiffs, "NWTS authorized, ordered, directed, and/or reviewed and consented to the acts, policies, and practices of Defendants RCO and RCO Hawaii in connection with the non-judicial foreclosures of mortgages held by NWTS's clients." FAC ¶ 37. NWTS arranged for FEI to publish the Notices of Sale as required by HRS § 667-5, FAC ¶¶ 46, 161, but charged the foreclosing mortgagee amounts higher than what was actually paid to publish the Notices of Sale in newspapers of general circulation in the counties where the properties were located, without the mortgagees' knowledge or consent. FAC ¶¶ 50, 163.

Plaintiffs allege numerous improprieties on the part of NWTS and FEI during the course of the non-judicial foreclosures of their properties, including: violating the terms of sale in the Notices of Sale,[4] such as the published auction date and time;

[3]HRS § 667-5 required that the foreclosing mortgagee retain a licensed Hawaii attorney during the non-judicial foreclosure process, who was responsible for ensuring the foreclosure complied with Chapter 667. *See* FAC ¶¶ 36, 151.

[4]Plaintiffs allege that the Hamilton Notice of Sale included the following standardized terms that appeared in nearly all Notices of Sale executed and recorded in non-judicial foreclosures by Defendants RCO and RCO Hawaii—

Terms of sale are: . . . (2) Property is sold strictly in "AS IS" and "WHERE IS" condition; (3) Property is sold without covenant or warranty, either express or

failing to orally announce and publish postponement notices of public auctions, and; using an FEI representative, who was not a licensed Hawaii attorney, to conduct the auctions. FAC ¶¶ 52–87, 165–77. Plaintiffs allege that their properties would

---

implied, as to title, possession or encumbrances; (4) At the close of the auction, Purchaser shall pay at least 10% of the highest successful bid price ("Bid") in cash, or by cashier's or certified check; provided, however, that Mortgagee may submit a credit bid up to the amount of the secured indebtedness; (5) The property shall be conveyed by Mortgagee by mortgagee's quitclaim conveyance, provided by Mortgagee, within 30 days after the auction and upon performance by Purchaser, no later than 21 days after the auction, of the following obligations: (a) In order to comply with recording the Mortgagee's Affidavit within the statutory timeframe, no later than thirty days from the date of sale, purchaser shall deliver to [Defendant RCO] a cashier's check for the remaining balance of the bid price, no later than the 21st day following sale . . . (9) Time is of the essence in this transaction and any delay in performance by Purchaser which prevents the closing from occurring within 30 days after the auction shall cause Mortgagee to sustain damages in amounts which will be difficult to ascertain. In the event the sale does not close because of any delay in performance by the Purchaser as herein stated, the 10% down payment may be retained by Mortgagee as liquidated damages and not as a penalty[.]

FAC ¶ 41. The Latronic Notice of Sale included the following set of standardized terms—

Terms of sale are: . . . (2) Property is sold "AS IS" and "WHERE IS", without covenant or warranty, either express or implied, as to title, possession, condition of property, encumbrances or any latent or patent defects whatsoever; . . . (4) All bidders must be prequalified and accept in writing all sale terms prior to bidding; (5) This sale is subject to additional terms and conditions set by Mortgagee which are posted at http://www.usa-foreclosure.com/states/hi/noi and incorporated herein by reference; (6) If title is not conveyed to Purchaser for any reason, other than Purchaser's own failure to perform, the Mortgagee shall return the Bid to Purchaser without interest, and Purchaser shall have no further recourse against Mortgagee and its agents; (7) Time is of the essence. Any delay in Purchaser's performance that prevents closing within 30 days after the auction shall cause Mortgagee to sustain damages which are difficult to measure. If the sale does not close solely due to Purchaser's failure to perform, the 10% down payment shall be retained by Mortgagee as liquidated damages, not as a penalty; and (8) this sale may be postponed by Mortgagee or its agent by public announcement.

FAC ¶ 158.

have sold for higher prices at auction if the Notices of Sale had truthfully advertised the terms of sale. FAC ¶ 80. Generally, Plaintiffs allege three causes of action: (1) wrongful foreclosure; (2) violations of HRS § 480-2(a); and (3) intentional interference with prospective economic advantage ("IIPEA"). FAC ¶¶ 209–10. "As redress for Defendants' repeated violations of [HRS] § 480-2(a), wrongful foreclosure, and tortious interference with the prospective economic advantage of Plaintiffs," each demands, "*inter alia*, damages, treble damages, punitive damages, reasonable attorneys' fees, and costs." FAC ¶ 210.

## II. Defendants' Motion To Dismiss[5]

NWTS and FEI seek dismissal, arguing that they cannot be liable for the wrongful foreclosure or HRS Chapter 480 claims against them as a matter of law because, as agents of a foreclosing mortgagee, they owe no duty by statute or under the common law to mortgagors. Plaintiffs counter that they state cognizable claims both under the relevant statutes and also because a non-attorney agent owes a duty to use reasonable means to maximize the sales price when choosing to actively

---

[5]On May 31, 2013, prior to the filing of Defendants' present Motion (Dkt. No. 68), NWTS and FEI filed a Motion to Dismiss the FAC (Dkt. No. 20). On October 17, 2013, the Court stayed proceedings in this matter pending the outcome of three cases before the United States Court of Appeals for the Ninth Circuit, *Lima v. Deutsche Bank National Trust Co*, Civ. No. 12-509 SOM/RLP; *Gibo v. U.S. Bank N.A.*, Civ. No. 12-514 SOM/RLP; and *Bald v. Wells Fargo Bank*, Civ. No. 13-135 SOM/KSC. Dkt. No. 51. The Court lifted the stay upon notice that the appeals had been resolved, and, by agreement of the parties reached at a status conference before the Court on June 22, 2017, the previously filed Motions to Dismiss were deemed withdrawn. Dkt. No. 61.

participate in a non-judicial foreclosure.   Defendants also move to dismiss

Plaintiffs' IIPEA cause of action as untimely and for failure to state a claim, which

Plaintiffs did not oppose.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a

complaint that fails "to state a claim upon which relief can be granted."   A Rule

12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory

or the absence of sufficient facts alleged.'"   *UMG Recordings, Inc. v. Shelter*

*Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"   555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 554, 570 (2007)).   "[T]he tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550

U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at

556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8(a)(2).   *Id.* at 679.

## DISCUSSION

As detailed below, the Court grants Defendants' Motion with respect to any wrongful foreclosure claim because: (1) NWTS and FEI, as agents, are not liable for alleged violations of HRS §§ 667-5 and 667-7 based on the Hawaiʻi Supreme Court's recent decision in *Hungate v. Law Office of David B. Rosen*, 139 Hawaiʻi 394, 391 P.3d 1 (2017); and (2) the Court declines to recognize a private cause of action in tort against a mortgagee's agent for wrongful foreclosure in the first instance.   Plaintiffs' claims under HRS § 480-2, however, sufficiently allege that NWTS and FEI's conduct "occurred in the course of 'trade or commerce'" with Plaintiffs, and Defendants' Motion is therefore denied with respect to Plaintiffs' UDAP and UMOC claims.   Finally, because the FAC fails to allege facts supporting the necessary prospective economic relationship between Plaintiffs and a third party, the IIEPA claim is dismissed for failure to state a claim.

## I.      Plaintiffs Fail To State A Cognizable Wrongful Foreclosure Claim Against Non-Mortgagees NWTS And FEI

Plaintiffs allege statutory and common law wrongful foreclosure claims, which Defendants seek to dismiss based upon the recent holding in *Hungate*, which

Defendants claim limits such causes of action to foreclosing mortgagees. Having examined the relevant statutes, their legislative history, and instructive case law on the foreclosure of mortgages, the Court concludes that Plaintiffs may not sustain a wrongful foreclosure claim under either the former non-judicial foreclosure statute or in tort as against NWTS and FEI. The Court discusses each in turn.

### A. Plaintiffs Fail To State A Wrongful Foreclosure Claim For Alleged Violations Of Former HRS §§ 667-5 *et seq.*

Plaintiffs allege that NWTS and FEI violated the version of HRS §§ 667-5 and 667-7 in effect at the time of their respective foreclosures.[6] *See, e.g.*, FAC ¶¶ 57, 67, 165, 167, 168, 170, 171. Defendants seek dismissal of the statutory wrongful foreclosure claim, arguing that no private right of action exists to enforce the provisions of former Chapter 667 against them because they were not the foreclosing mortgagee. The Court agrees.

During the stay of proceedings in this matter, the Hawaiʻi Supreme Court recognized the existence of a wrongful foreclosure action under HRS Chapter 667 Part I against foreclosing mortgagees in *Hungate v. Law Office of David B. Rosen*,

---

[6]Sections 667-5 and 667-7 were first amended in 2008 and then repealed in 2012. *See Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawaiʻi 227, 230 n.3, 361 P.3d 454, 457 n.3 (2015) (noting that HRS §§ 667-5 to 667-10, which governed the process of foreclosure by power of sale and were within Part I of Chapter 667, were repealed by 2012 Haw. Sess. Law Act 182, § 50 at 684). Thus, during all relevant times (October 14, 2008, the date of the Notice of Sale of the Hamilton Property, and up until June 16, 2010, when the auction on the Latronic property took place), the relevant versions of HRS §§ 667-5 and 667-7 were those located in the HRS 2008 Supplement, and were the same versions considered by the Hawaiʻi Supreme Court in *Hungate*.

139 Hawai'i 394, 391 P.3d 1 (2017). The Hawai'i Supreme Court decided, however, that "those statutory provisions do not create a private right of action against the attorney of a foreclosing mortgagee. [It] conclude[d] [that] Hungate does not have a cause of action against [attorney] Rosen under former HRS § 667-5 and his claims against Rosen based upon the mortgage's power of sale clause cannot stand." *Hungate*, 139 Hawai'i at 402, 391 P.3d at 9.

Plaintiffs here, as in *Hungate*, contend that Defendants owe them statutory duties under HRS §§ 667-5 and 667-7: the "question raised here is whether the requirements of former HRS § 667-5 and former HRS § 667-7 impose duties that may be enforced against the [agent] of a foreclosing mortgagee under a private right of action." *Hungate*, 139 Hawai'i at 405, 391 P.3d at 12. The Court, guided by the Hawai'i Supreme Court's analysis in *Hungate* with respect to a mortgagee's attorney, answers the question in the negative.

In determining whether a private right of action exists under a statute, Hawai'i courts consider the following factors[7]—

> (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether a private

---

[7]The Court applies Hawaii law to determine whether the statute creates a private right of action. *White v. Time Warner Cable, Inc*., 2013 WL 787967, at *5 (D. Haw. Feb. 28, 2013) ("To determine whether a private right of action exists under Hawaii statutory or regulatory law, the court must determine whether the state legislature intended to create a private cause of action.").

cause of action would be "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Whitey's Boat Cruises, [Inc. v. Napali-Kauai Boat Charters, Inc*.,] 110 Hawai'i 302, 312, 132 P.3d 1213, 1223 (2006). While each factor is relevant, "the key factor" is whether the legislature "intended to provide the plaintiff with a private right of action." *Id*. at 313 n.20, 132 P.3d at 1224 n.20; *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (noting that the three factors used to assess whether a private cause of action may be implied from statutory language ultimately "are ones traditionally relied upon in determining legislative intent").

*Hungate*, 139 Hawai'i at 406, 391 P.3d at 13.

As was the case in *Hungate*, with respect to the first factor, Plaintiffs are members of the class for whose special benefit HRS §§ 667-5 and 667-7 were enacted because "the statute was amended to benefit the 'party in breach of the mortgage agreement.' H. Stand. Comm. Rep. No. 1192, in 2008 House Journal, at 1450. As the part[ies] in breach of the mortgage contract, [Hamilton and Latronic] fall[] within the class for whom the statute was enacted." *Hungate*, 139 Hawai'i at 406, 391 P.3d at 13.

The second factor considers whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." *Whitey's Boat Cruises, Inc*., 110 Hawai'i at 312, 132 P.3d at 1223. As was the case in *Hungate*, former "HRS § 667-5 and its legislative history are silent as to whether the legislature intended to create a cause of action on behalf of the mortgagor against the

mortgagee's [agent]." *Hungate*, 139 Hawai'i at 406, 391 P.3d at 13. The Court

finds that the legislative history as a whole lacks any clear statement of intent to

allow private causes of action for violations of Sections 667-5 and 667-7 under the

particular circumstances alleged by Plaintiffs. "[I]mplying a private right of action

on the basis of [legislative] silence is a hazardous enterprise, at best." *Hungate*, 139

Hawai'i at 406, 391 P.3d at 13 (quoting *Touche Ross & Co*, 442 U.S. at 571)

(alteration in *Hungate*). *See also Muegge v. Wal–Mart Stores, Inc.,* 2013 WL

253531, at *3 (D. Haw. Jan. 22, 2013) (No private right of action created where

"[n]either the statute nor its legislative history expressly indicates that the legislature

intended to provide a private cause of action for violations of section 291-58. The

committee reports concerning the enactment of the statute are silent as to whether

the legislature intended a private cause of action."). In short, Plaintiffs have not

established that the legislature intended to create private right of action for

enforcement of Sections 667-5 or 667-7.

The *Hungate* court's examination of the third factor, "the underlying purposes

of the legislative scheme," revealed that, while "amendments to the foreclosure

process set forth in HRS chapter 667 Part I were intended to 'expand[] the rights of

mortgagors,'" *Hungate*, 139 Hawai'i at 406, 391 P.3d at 13 (quoting *Kondaur*

*Capital Corp. v. Matsuyoshi*, 136 Hawai'i 227, 239, 361 P.3d 454, 466 (2015)), they

were not intended to regulate the conduct of attorneys. *Id.* at 406, 391 P.3d at 13.

*Hungate* further detailed the history of the 2008 amendment as follows, noting its

particular purpose to set additional burdens on the mortgagee to protect the

mortgagor, rather than to regulate attorney conduct—

> a close reading of the legislative history of the 2008 amendment
> shows it was enacted to set additional burdens on the mortgagee
> to protect the mortgagor; the statute was not amended to regulate
> attorneys representing mortgagees.   The amendment's structure
> or scheme attempted "to streamline and ensure transparency in
> the non-judicial foreclosure process by requiring a foreclosure
> mortgagee to provide pertinent information regarding the
> property to interested parties."   S. Stand. Comm. Rep. No. 2108,
> in 2008 Senate Journal, at 917 (emphasis added).
>
> The committee reports explain that potential buyers and other
> interested parties faced difficulties in obtaining updated
> information regarding foreclosure sales from banks and entities
> located outside of Hawai'i: "A large number of Hawaii
> foreclosures are handled by servicing corporations located on the
> mainland that provide little to no information relating to the
> foreclosure to parties that are entitled to information regarding
> the property to be foreclosed."   Conf. Comm. Rep. No. 3-08, in
> 2008 House Journal, at 1710, 2008 Senate Journal, at 793.   Due
> to the growing concern that mortgagees were creating obstacles
> for parties seeking information, the legislature required a
> mortgagee to hire a Hawai'i-licensed attorney, who is physically
> present in the state, to serve as a "contact individual."   S. Stand.
> Comm. Rep. No. 2108, in 2008 Senate Journal, at 917.   The
> legislature concluded that a "Hawaii-based attorney will ensure
> that interested parties have a means to obtain information from a
> person with a local presence and the ability to provide useful
> information."   Conf. Comm. Rep. No. 3-08, in 2008 House
> Journal, at 1710, 2008 Senate Journal, at 793.
>
> *Thus, the underlying structure and intent of the amendment was*
> *to enable interested parties to request and receive information in*
> *a timely manner from mortgagees, and not to regulate attorneys'*

> conduct. *Permitting a mortgagor to assert a claim against the foreclosing mortgagee's attorney for failure to comply with former HRS § 667-5 falls outside this statutory scheme.*

*Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14 (emphasis added). Likewise, because there is no mention of regulating the conduct of any other agent who "assists" a foreclosing mortgagee, such as a foreclosure expeditor or facilitator akin to NWTS or FEI, the Court concludes that allowing a mortgagor to assert a direct claim against the foreclosing mortgagee's agent for failure to comply with former HRS § 667-5 "falls outside this statutory scheme." *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14.

The Hawaiʻi Supreme Court in *Hungate* considered a further factor: "whether 'additional remedies are unnecessary' when determining whether to recognize a new cause of action." *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14 (quoting *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawaiʻi 120, 126, 920 P.2d 334, 340 (1996)). Presented with analogous circumstances to those in *Hungate*, this Court finds that "creating a cause of action under former HRS § 667-5 [against the mortgagee's agent] is not necessary to protect the interests of the mortgagor. Rather, the mortgagor can protect its interests through filing a claim against the mortgagee for wrongful foreclosure." *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14 (citing *Santiago v. Tanaka*, 137 Hawaiʻi 137, 158–59, 366 P.3d 612, 633–34 (2016)

(holding the non-judicial foreclosure was wrongful and awarding restitution to mortgagor)).[8]

In sum, insofar as a private right of action analysis is concerned, former HRS §§ 667-5 and 667-7 do not provide a mortgagor with the ability to assert a wrongful foreclosure claim against a mortgagee's agent, whether that agent is an attorney, as was the case in *Hungate*, or a mortgage facilitator, as is the case here. *See Hungate*, 139 Hawaiʻi 394, 407, 391 P.3d 17; *accord Galima v. Ass'n of Apartment Owners of Palm Court by & through Bd. of Directors*, 2017 WL 1240181, at *10 (D. Haw. Mar. 30, 2017) ("Because the foreclosure of a condominium association's lien is treated like the foreclosure of a mortgage, a condominium owner cannot bring a wrongful foreclosure action against the condominium association's attorney for failing to comply with the requirements of Chapter 667.").

Accordingly, even assuming the truth of the allegations in the FAC—that the non-judicial foreclosures did not comply with the requirements of HRS Chapter 667—Plaintiffs cannot state a wrongful foreclosure claim under those statutory provisions against these Defendants, who were not the foreclosing mortgagees.

---

[8]The interests of the mortgagor are protected because, if voiding the foreclosure is not possible, the mortgagor is entitled to "restitution of their proven out-of-pocket losses" through a wrongful foreclosure claim. *Hungate*, 139 Hawaiʻi at 407, 391 P.3d at 14 (citation omitted). "Because mortgagees could be required to provide restitution to injured mortgagors under a wrongful foreclosure claim, a 'sufficient incentive' exists for mortgagees to ensure that the foreclosure proceedings are correctly performed by attorneys." *Id*. at 407, 391 P.3d at 14 (quoting *Best Place, Inc.*, 82 Hawaiʻi at 127, 920 P.2d at 341).

### B.  Plaintiffs Fail To State A Wrongful Foreclosure Tort Claim

Defendants also seek dismissal of Plaintiffs' wrongful foreclosure claim to the extent it is based upon a common law duty apart from any liability created by statute. *Hungate* recognized that the foreclosing mortgagee "had a common law duty to Hungate to use reasonable means to obtain the best price for Hungate's property," but did not extend that duty to any other party. *Hungate*, 139 Hawai'i at 402, 391 P.3d at 9.[9]  Plaintiffs urge the Court to recognize such a duty under principles of agency and as a matter of competing policy considerations. *See* Mem. in Opp'n at 19–20 ("[T]he policy which favors Plaintiffs' recovery is embodied in the longstanding rule that an agent will be personally liable for the tortious conduct of his principal if 'there can be found some active or passive participation in such wrongful conduct' by the agent.") (quoting *E. Star, Inc., S.A. v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 134, 712 P.2d 1148, 1155 (1985)) (some citations and alterations omitted); *see also id*. at 20 (citing Restatement (Second) of Agency, § 343 cmt. d).  The Court declines to do so.

The *Hungate* court reaffirmed the existing common law duty on the part of a mortgagee conducting non-judicial foreclosure sales of real property, and "further

---

[9]The mortgagor in *Hungate* did not bring such a claim against the mortgagee's attorney, and thus, the Hawai'i Supreme Court did not reach the issue now before this Court—whether the common-law duty of a foreclosing mortgagee extends to the mortgagee's non-attorney agent to use "fair and reasonable means in obtaining the best prices for the property on sale." *Hungate*, 139 Hawai'i at 408, 391 P.3d at 15 (citation and quotation marks omitted).

clarif[ied] that the mortgagee's duty to seek the best price under the circumstances does not require the mortgagee to obtain the fair market value of the property." *Hungate*, 139 Hawai'i at 408, 391 P.3d at 15. "While final bids on foreclosed property need not equate to fair market values, the mortgagee nonetheless has a duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances." *Hungate*, 139 Hawai'i at 409, 391 P.3d at 16. Therefore, in addition to the statutory duties "required under the now-repealed HRS § 667 Part I, a mortgagee has a duty to use 'fair and reasonable means in obtaining the best prices for the property on sale.'" *Hungate*, 139 Hawai'i at 408, 391 P.3d at 15.[10]

This Court is tasked with predicting an issue not reached in *Hungate* or elsewhere—whether the Hawai'i Supreme Court would recognize a common law duty that extends beyond mortgagees, to their agents facilitating non-judicial foreclosure sales of real property, under the facts of this case. "In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."

---

[10]The rationale for this rule is amplified where the mortgagee purchases the foreclosed property. *See Hungate*, 139 Hawai'i at 409, 391 P.3d at 16 ("When the non-judicial foreclosure sale results in the mortgagee purchasing the property, it is therefore imperative that the mortgagee establish that this result occurred after a fairly conducted sale.").

*Evanston Ins. Co. v. Nagano*, 891 F. Supp. 2d 1179, 1189 (D. Haw. 2012) (some

citations omitted); *see also Diaz v. Kubler Corp*., 785 F.3d 1329 (9th Cir. 2015)

("When interpreting state law, a federal court is bound to follow the decisions of the

state's highest court, and when the state supreme court has not spoken on an issue, a

federal court must determine what result the court would reach based on state

appellate court opinions.").   The Court predicts that Hawaiʻi courts would not

recognize such a duty.

The authorities relied upon by Plaintiffs do not convince the Court that

Hawaiʻi courts would adopt an independent duty on the part of a non-attorney agent

who assists a mortgagee in a non-judicial foreclosure, based upon the authorities

from this jurisdiction and elsewhere.[11]   For example, the Restatement (Second) of

Agency § 343, relied on by Plaintiffs, rather than creating an independent duty on

the part of an agent, restates the general rule that "[a]n agent who does an act

_____

[11]In the lending and servicing contexts, courts have declined to recognize such a duty on the part of a mortgagee's servicer or agent.   *See, e.g.*, *Willis v. JPMorgan Chase Bank, N.A*., 250 F. Supp. 3d 628, 632 (E.D. Cal. 2017) (granting motion to dismiss, finding that "plaintiff's negligence claim [against defendant loan servicer] fails because it did not owe plaintiff a legal duty of care under California law"); *Diunugala v. JP Morgan Chase Bank, N.A*., 81 F. Supp. 3d 969, 978 (S.D. Cal. 2015) (Under California law, "a loan servicer generally does not owe a duty to the borrower of the loan it is servicing."); *Jean v. Am. Home Mortg. Servicing, Inc.*, 2012 WL 1110090, at *4 (N.D. Ga. Mar. 30, 2012) (Under Georgia law, "[n]o rational trier of fact could find that Defendant, as a loan servicer and agent for the owner of the Loan, owed Plaintiff any fiduciary duty and it did not owe her a fiduciary duty as a matter of law."); *see also MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495 (1st Cir. 2013) ("[T]he existence of a positive regulation imposing a duty on one actor does not by itself create a similar duty as a matter of state tort common law. . . . But in the absence of an independent duty, a plaintiff cannot proceed with a [tort] claim based solely on a statutory or regulatory violation.") (citations omitted).

*otherwise a tort* is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal[.]"   Restatement (Second) of Agency § 343 (emphasis added).   This general rule, however, does not speak to the recognition of a new duty under tort law—it simply acknowledges the well-established maxim that an agent remains liable for its own torts, despite the existence of an agency relationship.   *See also* Restatement (Third) of Agency § 7.01, cmt. b (2006) ("The justification for this basic rule is that a person is responsible for the legal consequences of torts committed by that person.").[12]   If the act is not independently tortious based upon a duty on the part of the agent, no independent cause of action will lie against the agent.

Absent clear legal authority in support of the claim that Plaintiffs seek to maintain against NWTS and FEI, the Court declines to infer a private right of action in tort against a foreclosing mortgagee's agent, based on the facts alleged here, in light of the instructive case law regarding the foreclosure of mortgages.   That is, this Court will not articulate a *new* tort principle under Hawai'i law that Hawai'i appellate courts have yet to recognize.   *See, e.g.*, *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 129 (3d Cir. 1993) (agreeing with the district court that

---

[12]This view is recognized by a majority of jurisdictions, even where the tortious acts were committed at the direction of the agent's principal.   *See, e.g.*, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 112–14 & n.23 (1984) (discussing in the context of Eleventh Amendment immunity).

"[i]f a state appellate court is not [yet] the correct tribunal for recognizing a drastic change in state law, then neither is a federal district court sitting in diversity"). Just as the *statutory* duties do not extend beyond *mortgagees*, this Court is not persuaded that Hawaiʻi courts would reach beyond the statute or the prior holdings of the state courts in order to extend the common-law duty to non-mortgagees. *See Kondaur*, 136 Hawaiʻi at 235, 361 P.3d at 462 (holding that a *mortgagee* has a duty to use "fair and reasonable means in obtaining the best prices for the property on sale") (citing *Ulrich v. Sec. Inv. Co.*, 35 Haw. 158, 168 (Haw. Terr. 1939);[13] *Silva v. Lopez*, 5 Haw. 262, 265 (Haw. Kingdom 1884) (requiring the mortgagee "to use discretion in an intelligent and reasonable manner, not to oppress the debtor or to sacrifice his estate").[14] This federal district court sitting in diversity declines to create a duty on

---

[13]Unlike the entities in *Kondaur* and *Ulrich*, FEI and NWTS are not parties to the mortgage or the corresponding contractual duties created by that document, including those contained in the power of sale. *Cf. Ulrich*, 35 Haw. at 170–72 ("Where a power of sale is contained *in a chattel mortgage* the covenant is implied that, if exercised, *the mortgagee* will execute the power consistent with his legal duties in the premises. An encyclopedic statement of the duties devolving upon the *mortgagee* in the manner and conduct of a foreclosure sale pursuant to a power of sale contained in a chattel mortgage is as follows: . . . sufficient incidents of a trust relation are present to require the *mortgagee* in the conduct of the sale to exercise reasonable care and diligence in the disposition of the property[.] [W]here the *mortgagee* forecloses under the power of sale in the mortgage he stands with respect to the mortgagor's rights in the property in the position of a trustee. . . . One of the *legal duties required of a mortgagee* upon the execution by him of a power of sale contained in a mortgage is to exercise reasonable diligence to secure the best possible prices upon the foreclosure sale of the property to be sold.") (emphasis added) (citations and quotations omitted).

[14]*Accord Fed. Home Loan Mortg. Corp. v. Kama*, 2016 WL 922780, at *7–*8 (D. Haw. Mar. 9, 2016) (federal district court, interpreting *Ulrich* and *Kondaur*, held that mortgagor sufficiently "alleged that the *mortgagee* breached its duty to act in good faith in connection with the foreclosure sale, as required by *Kondaur* and *Ulrich*," in order to state a tort claim for wrongful foreclosure, and determining, pre-*Hungate* that "[b]ased on the Hawaii Supreme Court's

21

the part of non-mortgagees, where the state appellate courts have not yet demonstrated any indication of recognizing one.

In short, the Court concludes that Plaintiffs cannot bring a wrongful foreclosure claim sounding in tort against NWTS and FEI.   Defendants' Motion is therefore granted with respect to this claim.

## II.   The FAC States Cognizable Claims Under HRS § 480-2

NWTS and FEI move to dismiss Plaintiffs' Section 480-2 cause of action because the allegedly wrongful conduct did not "occur in the course of trade or commerce" with Plaintiffs, and thus, Defendants owed no duty under the statute to Plaintiffs.   Defendants rely upon the holding in *Hungate* that the plaintiff could not sustain a Section 480-2 claim against the mortgagee's *attorney* as a matter of law, and urge this Court to extend that holding to a non-attorney agent of a foreclosing mortgagee.   Because the statute and case law cannot be read in the broad manner urged by Defendants, the Court declines to dismiss Plaintiffs' UDAP and UMOC claims at this preliminary stage.

---

discussion of the statutory requirements in relation to the [common law] *Ulrich* requirements, the Court is unclear whether in a cause of action alleging only a violation of HRS Chapter 667, the Hawaii Supreme Court would also require that the *Ulrich* requirements be established.   Thus, in the instant case, the Court deems it possible that [the mortgagor] has sufficiently pled a violation of HRS Chapter 667 based on his allegation that the *mortgagee* violated the duties set forth in *Ulrich* and affirmed in *Kondaur*.") (emphasis added).

Section 480-2 states, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480-2(a). Section 480-13 provides a private right of action for violations of Section 480-2.[15] The parties dispute whether Defendants' alleged acts occurred "in the conduct of any trade or commerce." The Court first outlines the applicable framework, with particular attention to the attorney exception newly announced in *Hungate*.

## A. <u>Legal Framework</u>

The Hawaiʻi Supreme Court examined whether Hungate, in the context of a non-judicial foreclosure, had "standing as a consumer to assert an unfair or deceptive acts or practices claim against [the mortgagee's attorney] Rosen." *Hungate*, 139 Hawaiʻi at 412, 391 P.3d at 19. The plaintiff argued that Rosen acted

---

[15]Only consumers, the attorney general, or the director of the office of consumer protection may bring a UDAP claim. HRS § 480-2(d). A consumer bringing a UDAP claim must allege: (1) a violation of HRS Chapter 480; (2) injury to plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages. *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc*., 113 Hawaiʻi 77, 148 P.3d 1179, 1215–16 (2006); *In re Kekauoha–Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012). A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Balthazar v. Verizon Haw., Inc*., 109 Hawaiʻi 69, 77, 123 P.3d 194, 202 (2005). An act is deceptive when it is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation omission or practice is material. *In re Kekauoha–Alisa*, 674 F.3d at 1091.
Any person may bring a UMOC claim. HRS § 480-2(e). A "plaintiff may recover under HRS §§ 480-2 and 480-13 for UMOC violations . . . if the plaintiff alleges and proves: (1) a violation of HRS Chapter 480; (2) an injury to the plaintiff's business or property that flows from the defendant's conduct that negatively affects competition or harms fair competition; and (3) proof of damages." *Gurrobat v. HTH Corp*., 133 Hawaiʻi 1, 23, 323 P.3d 792, 814 (2014).

as the attorney and agent for the mortgagee in conducting the foreclosure, and should be held liable to the same extent as his client.   The Hawai'i Supreme Court, however, rejected the *Hungate* plaintiff's comparisons to *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 65, 905 P.2d 29, 40 (1995), which held that that an agent or broker in a real estate transaction can be sued for UDAP under HRS § 480-2.[16]   It held instead that "the unique nature of the attorney-client relationship warrants distinguishing the role of broker and attorney for purposes of this case."   *Hungate*, 139 Hawai'i at 412, 391 P.3d at 19.   That was so because—

> [s]ellers and purchasers of real estate often "utilize and rely on brokers for their expertise and resources, including access to data in locating properties as well as determining pricing of 'comparables' as a basis for negotiations."   *Cieri*, 80 Hawai'i at 65, 905 P.2d at 40.   Hence, the role of a broker is to provide clients with expertise and resources in real estate transactions.

*Hungate*, 139 Hawai'i at 412–13, 391 P.3d at 19–20.   "In contrast, the role of an attorney involves representing a client's interests against those of an opposing party within an adversary system.   Attorneys bear a duty to zealously represent clients 'within the bounds of the law.'"   *Hungate*, 139 Hawai'i at 413, 391 P.3d at 20 (quoting *Giuliani v. Chuck*, 1 Haw. App. 379, 384, 620 P.2d 733, 737 (1980)).[17]

---

[16]In *Cieri,* the Hawai'i Supreme Court interpreted "trade or commerce" as used in Section 480-2 to mean acts or practices perpetrated in a "business context."   80 Hawai'i at 62–65, 905 P.2d 37–40.
[17]The court rejected the argument that the plaintiff could not maintain a Section 480-2 claim because he was not a consumer of the attorney's services.   In light of the statute's definition of "consumer," HRS chapter 480 "does not require that one be a 'consumer' of the defendant's goods

With this backdrop, the Court next turns to the application of the limited exception established by *Hungate* to the allegations in Plaintiffs' FAC.

### B.     Plaintiffs State Section 480-2 Claims Against Defendants

As detailed below, Court finds that the narrow exception under Section 480-2 carved out by the court in *Hungate*—limited by its facts to attorneys—does not apply to Defendants under the circumstances alleged.   The ruling in *Hungate* was grounded in the "*unique nature* of the attorney-client relationship [which] warrant[ed] distinguishing the role of broker and attorney for *purposes of this case*." *Hungate*, 139 Hawaiʻi at 412, 391 P.3d at 19 (emphasis added).   The same unique concerns identified in *Hungate* are not present outside of the attorney-client relationship.   Rather, Defendants present no compelling reason to expand the carefully crafted holding in *Hungate* or to depart from the rule announced in *Cieri*.

Plaintiffs maintain that NWTS and FEI "regularly . . . conduct[ed] foreclosures" of mortgage loans held by financial institutions, *Hungate*, 139 Hawaiʻi at 410, 391 P.3d at 17, and actively engaged in "the systematic sale . . . of interests in real property," *Cieri*, 80 Hawaiʻi at 65, 905 P.2d at 40, by facilitating non-judicial

---

or services, but merely a 'consumer.'"   A plaintiff "establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant." Therefore, the "only requirement is that the consumer's commitment of money, property, or services in a personal investment forms the basis of his complaint."   *Hungate*, 139 Hawaiʻi at 412, 391 P.3d at 19 (citations and quotation marks omitted).

foreclosure sales for profit.[18]   *See* Mem. in Opp'n at 8, Dkt. No 70; *see also* FAC

¶¶ 6, 9, 37, 53–54, 181(b).   Plaintiffs allege direct Section 480-2 claims for UDAP

and UMOC against NWTS and FEI based upon their own conduct, not merely as the

agents of the foreclosing mortgagees.[19]   For example, Plaintiffs allege that at

NWTS's direction, FEI was responsible for conducting and postponing foreclosure

auctions throughout Hawaii.   *See* FAC ¶¶ 53–54, 57–58, 67, 167–68.   Plaintiffs

also allege that Defendants violated Section 480-2 "by misrepresenting to

foreclosing mortgagees the actual cost of publishing notices of sale in non-judicial

foreclosures of Class members' properties, thereby allowing Defendants to inflate

the cost of publication to the substantial injury of the Class."   FAC ¶ 189; *see also*

FAC ¶¶ 47, 49–50 (alleging that NWTS retained FEI to publish Notices of Sale for

---

[18]Indeed, as *Hungate* recognized when discussing *Cieri*, "[s]ellers and purchasers of real estate often 'utilize and rely on brokers for their expertise and resources[.]'"   *Hungate*, 139 Hawai'i at 412, 391 P.3d at 19 (quoting *Cieri*, 80 Hawai'i at 65, 905 P.2d at 40).   The real estate brokers at issue in *Cieri* engaged in "trade or commerce" with the plaintiffs, notwithstanding that the individual sellers of real estate did not, because although neither a buyer nor seller, a broker is relied upon by the parties to the transaction for their expertise and resources.

[19]Specifically, Plaintiffs allege that the conduct of Defendants occurred in the "conduct of any trade or commerce" because the "transactions involved the sales of real property at public auctions conducted by Defendants on terms of sale advertised by Defendants to the general public: (a) as part of Defendants' own business of representing foreclosing mortgagees; and (b) as part of Defendants' clients' business in carrying out terms of mortgage contracts with consumer Plaintiffs."   FAC ¶ 184.

NWTS's Hawaii clients, and NWTS and FEI jointly arranged to charge NWTS's clients more than the actual cost of publishing the notices to increase their profits).[20]

Defendants argue that, like the allegations in *Hungate*, the claims in this case arise out of NWTS and FEI's advertisement of foreclosure sales on behalf of mortgagees and their alleged failure to publish notices of postponement. *See Hungate*, 139 Hawaiʻi at 400, 391 P.3d at 7 (in *Hungate*, the mortgagee's attorney allegedly advertised a foreclosure sale date 28 days after the first published notice, and failed to publicize the postponed sale date). Defendants contend that, like the attorney in *Hungate*, NWTS and FEI's actions were "directly adverse to Plaintiffs and meant to advance only the interests of the mortgagees in their pursuit of legal remedies against the Plaintiffs." Reply at 5, Dkt. No. 51. This characterization of "direct adversity," while perhaps self-evident to Defendants, is found nowhere in the FAC, and is drawn entirely from Defendants' briefing. At this stage of the litigation, the Court is limited to the allegations in the FAC, which do not demonstrate that Defendants are, in fact, similarly situated to the attorney-defendant

---

[20] *See also Galima*, 2017 WL 1240181, at *15 (D. Haw. Mar. 30, 2017) (concluding that "the AOAO's placement of a lien on Plaintiffs' Unit for unpaid assessments and its foreclosure of that lien occurred in the business context, and the AOAO's conduct may give rise to a UDAP claim"). *Cf. Dalesandro v. Longs Drug Stores Cal., Inc*., 383 F. Supp. 2d 1244, 1250–51 (D. Haw. 2005) (adopting the *Cieri* court's interpretation of "trade or commerce" and concluding that a pharmacy owner was not engaged in "trade or commerce" when it refused to provide a customer with a complete copy of records, where the refusal was "in the context of settlement and preparation for litigation, which is distinct from a 'business context'").

in *Hungate* as a matter of law.   The unique factors underlying the attorney-client

relationship, recognized in *Hungate*, are simply not evident on the face of the

pleadings.[21]   Of particular concern, the *Hungate* court noted previous decisions

declining to recognize a duty in favor of a plaintiff adversely affected by an

attorney's performance of legal services on behalf of the opposing party—

> In *[Buscher v.] Boning*, [114 Hawaiʻi 202, 159 P.3d 814 (2007)],
> we noted that "creation of a duty in favor of an adversary of the
> attorney's client would create an unacceptable conflict of
> interest.   Not only would the adversary's interests interfere with
> the client's interests, the attorney's justifiable concern with
> being sued for negligence would detrimentally interfere with the
> attorney-client relationship."   *Boning*, 114 Hawaiʻi at 220, 159
> P.3d at 832.
>
> * * * *
>
> Similar to the negligence issue in *Boning*, in foreclosure actions
> an attorney's justifiable concern with being sued by the opposing
> party for UDAP could compromise the attorney's ability to
> zealously represent his or her client.

-------------------

[21]The Hawaii Supreme Court explained its particular "desire to avoid creating unacceptable conflicts of interest in this context, to protect attorney-client counsel and advice from the intrusion of competing concerns, and to allow adequate room for zealous advocacy," and cited to the Hawaiʻi Rules of Professional Conduct, "Preamble," ¶ 2; ¶ 8; ¶ 9.   These concerns, as in the instant case, are absent from "the role of a [real estate] broker, [which] is to provide clients with expertise and resources in real estate transactions."   *Hungate*, 139 Hawaiʻi at 412–13 n.22, 391 P.3d at 19–20 n.22.   *Accord Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (holding that mortgagors' claims against law firm, "which pursued the foreclosure against the Moores on behalf of the other defendants, also fail for lack of an alleged, apparent, or implied duty," because "[t]he New Hampshire Supreme Court has expressly "decline[d] to impose on an attorney a duty of care to a non-client whose interests are adverse to those of a client [and] [i]n so holding, the court noted that "the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client.") (citations omitted).

*Hungate*, 139 Hawaiʻi at 413, 391 P.3d at 20.

The *Hungate* court reasoned that "[p]ermitting a party to sue his or her opponent's attorney for UDAP under HRS § 480-2 in foreclosure actions presents a similar issue in that an attorney's concern with being sued by a party opponent could compromise his or her representation of the client."  *Hungate*, 139 Hawaiʻi at 413, 391 P.3d at 20.  No such concern is similarly presented by permitting a party to sue a mortgage expeditor for violations of Section 480-2 where the expeditor is engaged by a foreclosing mortgagee in the course of a non-judicial foreclosure.  That is, *Hungate*'s logic does *not* apply with equal force to Plaintiffs' Section 480-2 claims against NWTS and FEI.

*Hungate*'s limited exception to Section 480-2 liability for attorneys, based upon the "unique nature of the attorney-client relationship," does not extend to Defendants under the circumstances alleged in the FAC.  Defendants present no convincing reason to expand the narrow ruling in *Hungate* beyond its intended confines.  Consequently, the Court finds that the FAC sufficiently alleges that NWTS and FEI's conduct occurred "in the course of 'trade or commerce'" with Plaintiffs, and Defendants' Motion is denied with respect to Plaintiffs' Section 480-2 UDAP and UMOC claims.

## III.   The Complaint Fails To State A Claim For Intentional Interference With Prospective Economic Advantage

Defendants move to dismiss the IIPEA claim because Plaintiffs fail to allege the essential elements necessary to maintain that cause of action.   The Court agrees and grants the unopposed Motion as to this claim.[22]

> [T]he following elements have evolved into the tort of intentional or tortious interference with prospective business advantage: (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Lowther v. U.S. Bank N.A*., 971 F. Supp. 2d 989, 1015 (D. Haw. 2013), *aff'd* 2017 WL 5507656 (9th Cir. Nov. 17, 2017) (quoting *Bodell Construction Co. v. Ohio Pacific Tech, Inc*., 458 F. Supp. 2d 1153, 1163 (D. Haw. 2006)) (some citations omitted); *see also Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai'i 35, 47–48, 122 P.3d 1133, 1146–47 (Ct. App. 2005); *Lizza v. Deutsche Bank Nat'l Tr. Co*., 1 F. Supp. 3d 1106, 1122 (D. Haw. 2014), *aff'd*, 2017 WL 4966734 (9th Cir. Oct. 27, 2017).

---

[22]Although Defendants also moved to dismiss the IIPEA claim on statute of limitations grounds, the Court need not reach this alternative rationale in light of the Court's conclusion that Plaintiffs fail to state a claim for IIPEA.

The FAC alleges that "Defendants wrongfully, intentionally or recklessly, and tortiously interfered with Plaintiffs' and the Class' prospective economic advantage in obtaining the highest price for their properties." FAC ¶ 209. Plaintiffs also assert that they "lost substantial equity in their properties and/or had their residual debt increased, lost the use and/or rental value of their properties and incurred expenses, including but not limited to legal fees and costs[.]" FAC ¶¶ 194, 197; *id.* ¶¶ 200, 206. These allegations are insufficient to state an IIPEA claim.

With respect to the first element, the FAC neither identifies a third party with whom Plaintiffs had a colorable economic relationship, nor does it allege any reasonable probability of the development of a full contractual relationship. Similar claims have been dismissed with prejudice in this district. In *Lowther*, as here, the plaintiff alleged that the defendant had interfered with plaintiff's opportunity to rent or sell the property. The district court rejected the claim, as the plaintiff had not alleged the expectancy as to the rental or sale of the property prior to the interfering conduct, holding that a general allegation that a plaintiff was deprived of an economic opportunity is not sufficiently definite. *Lowther*, 971 F. Supp. 2d at 1017. The Ninth Circuit affirmed the district court's dismissal of Lowther's IIPEA claim with prejudice "because Lowther failed to allege 'the existence of a valid business relationship or a prospective advantage.'" 2017 WL 5507656, at *1

(quoting *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Hawai'i 77, 116, 148 P.3d 1179, 1218 (2006)). So too here.

Another decision from this district likewise dismissed an IIPEA claim that "fail[ed] to allege a sufficiently definite prospective economic benefit, such as the rental or sale of the Plaintiffs' properties, prior to the Defendant's allegedly interfering conduct [or] that Defendant knew of a Plaintiff's prospective economic use of their Properties, or acted with a purposeful intent to interfere with that prospective economic advantage." *Lizza v. Deutsche Bank Nat. Tr. Co.,* 1 F. Supp. 3d 1106, 1122–23 (D. Haw. 2014), *aff'd*, 2017 WL 4966734 (9th Cir. Oct. 27, 2017).

Because the FAC fails to allege, *inter alia*, "the existence of a valid business relationship or a prospective advantage," Plaintiffs fail to state a claim for IIPEA and the cause of action is therefore dismissed. Defendants' unopposed Motion is granted with respect to Plaintiffs' claim for IIPEA.[23]

---

[23]In opposition, Plaintiffs request leave to amend to allege an alternate theory of liability—"intentional harm to property interests." *See* Mem. in Opp'n at 21–22. But like the plaintiff in *Lizza*, they have "failed to state, as a matter of law, a claim for wrongful foreclosure, and [apparently] ha[ve] conceded [their] default on the loan[s]. Under these circumstances, [Plaintiffs] fail[] to state a claim for intentional harm to property interests." *Lizza v. Deutsche Bank Nat'l Tr. Co*., 2017 WL 4966734, at *1 (9th Cir. Oct. 27, 2017) (citing *Giuliani v. Chuck*, 1 Haw. App. 379, 620 P.2d 733, 738 (1980) ("The tort, however, requires the deprivation of or injury to a "legally protected . . . interest.'")). Plaintiffs' request for leave to amend is therefore denied. If Plaintiffs wish, they may file an appropriate motion to amend that more fully addresses this alternate theory than has been presented here.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' wrongful foreclosure and intentional interference with prospective economic advantage causes of action.   Because the Motion is DENIED with respect to the HRS § 480-2 cause of action, Plaintiffs' claims for unfair or deceptive acts or practices and unfair methods of competition remain.

IT IS SO ORDERED.

DATED: November 28, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Hamilton v. Foreclosure Expeditors/Initiators LLC et al.,* CV. NO. 13-00145 DKW-KJM;
**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**